## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ELIJAH JACKSON**, <br> D.C. Central Detention Facility <br> 1901 D Street, SE <br> Washington, D.C. 20003 <br>         *Plaintiff*, <br>     v. <br> <br> **DISTRICT OF COLUMBIA**, <br> **Serve:** Mayor of the District of Columbia <br> 1350 Pennsylvania Avenue, NW Suite 316 <br> Washington, D.C. 20004 <br> <br> Attorney General of the District of Columbia <br> 441 4th Street, NW <br> Washington, D.C. 20001 <br> <br> **JOHN MERZIG**, <br> Badge No. 4585 <br> c/o D.C. Metropolitan Police Department <br> First District Station <br> 500 E Street SE <br> Washington, D.C. 20003 <br> <br> **MATTHEW FOGLE**, <br> MPD Badge No. 4527 <br> c/o Hampstead Police Department <br> 1112 S. Main Street <br> Hampstead, MD 21074 <br> <br> **KANIKA BOLTON**, <br> Badge No. 9921 <br> c/o Fifth District Station <br> 1805 Bladensberg Road, NE <br> Washington, D.C. 20002 <br> <br> **CAROL SMITH**, <br> Badge No. 9664 <br> c/o Fifth District Station <br> 1805 Bladensberg Road, NE <br> Washington, D.C. 20002 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **Civil Action No.** <br> <br> <br> **Civil Rights Complaint** <br> **42 U.S.C. § 1983** <br> <br> <br> **JURY TRIAL DEMANDED** |

| | |
|---|---|
| **ANTOINE BRAITHWAITE**, | ) |
| Badge No. 2675 | ) |
| c/o Fifth District Station | ) |
| 1805 Bladensberg Road, NE | ) |
| Washington, D.C. 20002 | ) |
| | ) |
| **MICHAEL HARRISON**, | ) |
| Badge No. 5996 | ) |
| c/o Fifth District Station | ) |
| 1805 Bladensberg Road, NE | ) |
| Washington, D.C. 20002 | ) |
| | ) |
| **LORELEI HILLGREN**, | ) |
| Badge No. 3852 | ) |
| c/o Fifth District Station | ) |
| 1805 Bladensberg Road, NE | ) |
| Washington, D.C. 20002 | ) |
| | ) |
| **J. DOE(S) MPD OFFICER(S),** | ) |
| c/o Fifth District Station | ) |
| 1805 Bladensberg Road, NE | ) |
| Washington, D.C. 20002 | ) |
| *Defendants*. | ) |
| | ) |

Plaintiff Elijah Jackson ("Jackson") hereby alleges as follows:

## NATURE OF THE CASE

1. In the early morning hours of May 5, 2015, Jackson was severely beaten by multiple officers of the D.C. Metropolitan Police Department ("MPD") on the 1500 block of Eckington Place in NE Washington, D.C.

2. Jackson brings claims for monetary damages under 42 U.S.C. § 1983, against multiple members of the MPD and the District of Columbia for the use of excessive force in violation of Jackson's rights under the Fourth and Fifth Amendments to the United States Constitution.

3. Jackson also brings common law claims of assault and battery and intentional infliction of emotional distress against the MPD officers that perpetuated the assault, including liability premised on the doctrine of *respondeat superior,* against the District of Columbia.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). This Court has jurisdiction over claims based on District of Columbia law under 28 U.S.C. § 1367(a).

5. Jackson provided written notice to the Mayor of the District of Columbia on September 24, 2015, of his intent to file a civil action against the District of Columbia for injuries stemming from the events alleged herein, as required by D.C. Code § 12-309.  This written notice was mailed, via USPS Certified Mail to the D.C. Office of Risk Management ("ORM"), the Mayor's designee, and included the approximate time, place, cause, and circumstances of Jackson's injuries giving rise to his claim for damages, as alleged herein.  In a letter dated October 5, 2015, ORM Claims Specialist, Charlotte Fisher, acknowledged Jackson's compliance with D.C. Code § 12-309.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because all of the events and omissions giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES

7. Plaintiff Elijah Jackson is a United States citizen and a thirty-nine year old resident of the District of Columbia.  Jackson is a D.C. Code Offender being held subject to a parole detainer at the D.C. Central Detention Facility.  At the time of incident alleged herein, Jackson worked as construction superintendent for Banneker Ventures.

8. The District of Columbia ("District") is a municipal corporation and is the legal entity responsible for itself and the MPD. The District was the employer of the individual Defendant Officers at the time of this incident.

9. The Defendant Officers John Merzig ("Officer Merzig"), Matthew Fogle ("Officer Fogle"), Kanika Bolton ("Officer Bolton"), Carol Smith ("Officer Smith"), Antoine Braithwaite ("Officer Braithwaite"), Officer Lorelei Hillgren ("Officer Hillgren"), Sergeant Michael Harrison ("Sergeant Harrison") (collectively "MPD Officers"), whom Plaintiff sues in their individual capacities, were employees of the MPD at the time of this incident. Officers Merzig, Bolton, Smith, Braithwaite, Hillgren and Sergeant Harrison are currently employees of the MPD. Officer Fogle is currently an employee of the Hempstead Police Department in Carroll County, Maryland. The MPD Officers, at all times relevant herein, acted under color of District of Columbia law and, in whole or in part, in their capacities as agents and employees of the District.

10. The J. Doe MPD Officers ("J. Doe Officers"), whom Plaintiff sues in their individual capacities, were employees of the MPD at the time of this incident. These unknown officers at all times relevant herein, acted under color of District of Columbia law and, in whole or in part, in their capacities as agents and employees of the District.

**FACTUAL ALLEGATIONS**

11. On May 5, 2015, at approximately 1:27 a.m., Jackson was driving a blue Chevrolet Malibu westbound on Florida Avenue, NE in Washington, D.C. There were two passengers in the backseat of the vehicle. As Jackson approached the intersection of 5th Street and Florida Avenue, NE, he slowed down for a red light.

4

12. When Jackson came to a complete stop, his vehicle made contact with the rear bumper of the vehicle in front of him, a scooter operated by Aaron Talley ("Talley"). The scooter's taillight was out. Talley jumped off the scooter, let it fall to the ground and began walking toward Jackson's vehicle. Jackson, cognizant of the late hour and unsure if Talley was armed, did not feel comfortable getting out of his vehicle so he lowered the driver's side window to ask if Talley was injured. Talley replied that he was "ok" and demanded that Jackson give him money to repair the scooter. When Jackson told Talley that he did not have cash, Talley became visibly irritated and demanded that Jackson find a way to get him money for his scooter. Jackson drove away from the scene going westbound on Florida Avenue, NE.

13. As Jackson travelled through the intersection of Florida and New York Avenues, NE, he noticed a marked MPD cruiser two car-lengths behind him with its lights activated. This cruiser was operated by Officer Merzig of the First District, and Officer Fogle of the Fifth District, who were assigned to a joint multi-district task force. Uncertain if he was being pulled over, Jackson continued through the 100 block of Florida Avenue, NE, before making a right turn onto the 1500 block of Eckington Place, NE. The Officers followed and activated the siren, prompting Jackson to pull over. Jackson immediately complied, pulling over to a well-lit area. As he exited the vehicle, Jackson raised his hands to indicate that he was unarmed and did not pose a threat.

14. Jackson heard the officers order him to get back in the vehicle and, seeking to comply with their order, he turned toward the open driver's side door. As Jackson lowered his body to get into the vehicle one of the officers grabbed him from behind and slammed his face into the side of the car. The officer continued to hold Jackson's head while another officer grabbed Jackson from behind and attempted to pull him away. Jackson, disoriented and bleeding

profusely, was then hit with a burst of mace to his face. With his eyes and nose burning from the mace, Jackson stumbled and attempted to raise his hands to protect his beaten face.

15. The Officers then performed a "tactical takedown," throwing Jackson to the pavement. Lying on his stomach in pain and unable to see, Jackson reflexively moved his hands in an attempt to shield his beaten face from further blows. Multiple officers forcibly restrained him on the ground, pinning one of Jackson's arms under his chest while placing handcuffs on his other wrist. Jackson could hear several voices but as result of the mace, he could not open his eyes to determine how many MPD officers were at the scene.

16. Officers Bolton and Smith, who were parked in their police cruiser on Eckington Place, NE, arrived at the scene shortly after Jackson pulled over.

17. Following the takedown, Jackson felt another blast of mace hit his face and, as an officer pulled him off the ground, he began to scream and twist his body in an attempt to shield his beaten face. One of the officers grabbed Jackson and sat him on the curb for about 10 minutes, during which time photographs were taken of his injuries. Reproductions of these photographs are attached hereto as Exhibit A, and incorporated herein by reference.

18. Jackson was then transferred from the police cruiser to a stretcher, placed in arm and leg restraints, and loaded into the ambulance. Prior to Jackson being loaded into the ambulance, Officer Merzig obtained Jackson's D.C. identification card and confirmed Jackson's name and date of birth. The two passengers remained with Jackson's vehicle, were briefly questioned, and permitted to drive the vehicle away from the scene. Jackson's vehicle was never searched or impounded.

19. Jackson was taken to Medstar Washington Hospital Center ("WHC") and admitted to the emergency care unit at 2:50 a.m. for "evaluation of bilateral eye pain." Officer

Braithwaite rode with Jackson to WHC and despite the fact that the Officers knew Jackson's identity, he registered Jackson as "John Doe." Officer Braithwaite remained at WHC for three to four hours after Jackson was admitted. In the medical record, the attending physician notes that Jackson was "pepper-sprayed but [Braithwaite] denied other trauma." A true and accurate copy of the physician notes in the WHC medical record is attached hereto as Exhibit B, and incorporated herein by reference.

20. Jackson was given critical care for approximately forty-five minutes and, while being triaged, he became unresponsive on at least two occasions. As a result of his periods of unconsciousness, Jackson was placed in "C-spine precautions for mechanism of trauma" and admitted to the intensive care unit ("ICU"). At 5:30 a.m., the attending physician called Sergeant Harrison to ascertain the full extent of Jackson's injuries. This physician notes that Sergeant Harrison reported that officers punched Jackson in the face once, sprayed him with mace, and subjected him to a "tactical takedown." See Exhibit B.

21. On May 13, 2015, Jackson was discharged from WHC into the custody of the MPD. Upon being discharged, Jackson was immediately transported to Central Cell Block where he spent the night, before being arraigned the morning of May 14, 2015. Jackson pleaded not guilty to two counts of misdemeanor Assault on a Police Officer, as to Officers Merzig and Fogle, and one count each of Failure to Obey, Operating after Revocation, Fleeing a Law Enforcement Officer, Reckless Driving and Leaving after Colliding.

22. On August 28, 2015, the District filed a Superseding Information against Jackson, amending the charges to three counts of misdemeanor Assault on a Police Officer, as to Officers Merzig, Fogle and Braithwaite, and one count of Fleeing a Law Enforcement Officer. On September 9, 2015, Jackson was arraigned and pleaded not guilty to these charges.

7

23. Jackson stood trial in D.C. Superior Court case 2015 CMD 006188, for the misdemeanor charges alleged in the Superseding Information. On December 9, 2015, Jackson was found guilty of two counts of Assault on a Police Officer, as to Officers Merzig and Fogle, and one count of Fleeing a Law Enforcement Officer. Jackson was found not guilty of Assault on a Police Officer, as to Officer Braithwaite.

24. Jackson suffered severe physical injuries as a direct result of the Defendant officers' use of excessive force. While in the ICU, Jackson was diagnosed with a traumatic herniation of cervical discs between the C5/C6 and C6/C7 vertebrae, myelopathy, and a fractured septum and nasal bone. On May 8, 2015, Jackson underwent elective surgery to repair his herniated cervical discs and myelopathy. According to the WHC discharge notes, Jackson was advised not to perform heavy lifting over five pounds as well as not to bend or twist his body. At the doctor's request, Jackson scheduled a follow-up appointment for June 4, 2015. Jackson was not able to attend the appointment because he was detained on a parole violation warrant, issued as a result of the May 5, 2015, arrest.

25. Jackson continues to suffer physically from the injuries he sustained as a result of the MPD and J. Doe Officers' use of excessive force. He suffers from severe headaches, numbness in his hands, memory loss, muscle spasms, insomnia, anxiety and neck pain. Jackson has been prescribed medication to treat his pain and muscle spasms. Since being incarcerated Jackson has not received the level of follow-up care prescribed by the doctor, which has further aggravated his injuries.

26. While incarcerated Jackson sought mental health treatment from a Department of Corrections ("DOC") psychiatrist. Prior to the events described herein, Jackson had never sought or been treated for a mental health disorder. He was diagnosed with post-traumatic stress

8

disorder ("PTSD") and prescribed anti-depressant medication to treat his anxiety and insomnia caused by the assault.

27. Immediately prior to his hospitalization Jackson worked as a construction superintendent, a position that required him to perform a substantial amount of physical labor such as frequently lifting heavy objects. The assault on Jackson was the proximate cause of the loss of his job. The loss of income has put a significant financial strain on his wife and two children.

**COUNT I**
**Violation of the Fourth Amendment – 42 U.S.C. § 1983**
**(Against the Defendant Officers in Their Individual Capacities)**

28. Jackson re-alleges Paragraphs 11 – 27 and incorporates them herein by reference.

29. At all times relevant hereto, Jackson had a right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. This right encompasses the right to be free from the use of excessive force by law enforcement officers during an arrest, investigatory stop or any other seizure.

30. MPD and J. Doe Officers, in the course of seizing Jackson, used excessive force that was objectively unreasonable. Using excessive force, MPD Officers violated established constitutional law and other rights of which a reasonable MPD Officer should have known. Jackson did not pose an immediate threat to the safety of MPD and J. Doe Officers, was not actively resisting and was unarmed at all times that these Officers used excessive force.

31. MPD and J. Doe Officers who may not have been directly involved in the use of excessive force but who observed the use of excessive force, are liable as bystanders. MPD and J. Doe Officers were aware that their fellow officers were using excessive force, in violation of Jackson's Fourth Amendment rights, had a reasonable opportunity to prevent the harm and yet

chose not to act. MPD and J. Doe Officers' acts, which were performed while acting under color of District of Columbia law, violated Jackson's rights under the Fourth Amendment. MPD and J. Doe Officers are liable to Jackson under 42 U.S.C. § 1983.

32. As a direct result of MPD and J. Doe Officers' use of excessive force in violation of Jackson's Fourth Amendment rights, Jackson has suffered extensive damages including, but not limited to, physical injuries, pain and suffering, anxiety, depression, insomnia, lost earnings and medical expenses.

33. The acts of MPD and J. Doe Officers were done knowingly, intentionally, maliciously and with deliberate and callous indifference to Jackson's personal safety, constitutional rights and with the intent to harm Jackson. Because of these acts, Jackson is entitled to an award of punitive damages against MPD and J. Doe Officers.

## COUNT II
### Violation of the Fifth Amendment – 42 U.S.C. § 1983
### (Against the Defendant Officers in Their Individual Capacities)

34. Jackson re-alleges Paragraphs 11 – 27 and incorporates them herein by reference.

35. At all times relevant hereto, Jackson had a right to substantive due process under the Fifth Amendment. This right encompasses the right to be free from arbitrary government action, which includes the right to be free from uses of force by law enforcement officers that shock the conscience.

36. MPD and J. Doe Officers reckless use of force against Jackson was so excessive, violent and beyond the bounds of decency that it shocks the conscience. MPD and J. Doe Officers intended to cause harm to Jackson, and their use of excessive force was unrelated to any legitimate law enforcement objective or concern for their personal safety.

37. MPD and J. Doe Officers who may have not been directly involved in the use of excessive force but who observed the use of excessive force, are liable as bystanders. These MPD and J. Doe Officers were aware that their fellow officers were using excessive force, in violation of Jackson's Fifth Amendment right to substantive due process, had a reasonable opportunity to prevent the harm and yet chose not to act.

38. MPD and J. Doe Officers' acts, which were performed while acting under color of District of Columbia law, violated Jackson's rights to substantive due process under the Fifth Amendment. MPD and J. Doe Officers are liable to Jackson under 42 U.S.C. § 1983.

39. As a direct result of MPD and J. Doe Officers' use of excessive force in violation of Jackson's Fifth Amendment right to substantive due process, Jackson has suffered extensive damages including, but not limited to, physical injuries, pain and suffering, anxiety, depression, insomnia, lost earnings and medical expenses.

40. MPD and J. Doe Officers acted knowingly, intentionally, maliciously and with deliberate and callous indifference to Jackson's personal safety, constitutional rights and with the intent to harm Jackson. Because of these acts, Jackson is entitled to an award of punitive damages against the MPD and J. Doe Officers.

### COUNT III
**Assault and Battery**
**(Against the Defendant Officers and the District of Columbia)**

41. Jackson re-alleges Paragraphs 11 – 27 and incorporates them herein by reference.

42. MPD and J. Doe Officers' use of force against Jackson was far in excess of that which a reasonable law enforcement officer would believe to be necessary. Jackson did not pose an immediate threat to the safety of the MPD and J. Doe Officers, was not actively resisting and was unarmed at all times that the MPD and J. Doe Officers used excessive force. MPD and J. Doe

11

Officers' conduct does not fall within the scope of the qualified privilege that a law enforcement officer has to use reasonable force to effect an arrest.

43. The District is vicariously liable under the doctrine of *respondeat superior* for the intentional assault and battery committed by the Defendant Officers against Jackson. MPD and J. Doe Officers were acting within the scope of their employment when they committed the assault and battery against Jackson. MPD and J. Doe Officers committed the assault and battery in the course of effecting an arrest.

44. As a direct result of MPD and J. Doe Officers' assault and battery against Jackson, for which the District is vicariously liable, Jackson has suffered extensive damages including, but not limited to, physical injuries, pain and suffering, anxiety, depression, insomnia, lost earnings and medical expenses.

45. The acts of MPD and J. Doe Officers were done knowingly, intentionally, maliciously and with deliberate and callous indifference to Jackson's personal safety, constitutional rights and with the intent to harm Jackson. Because of these acts, Jackson is entitled to an award of punitive damages against these Officers.

### COUNT IV
### Intentional Intention of Emotional Distress
### (Against the Defendant Officers and the District of Columbia)

46. Jackson re-alleges Paragraphs 11 – 27 and incorporates them herein by reference.

47. MPD and J. Doe Officers engaged in extreme and outrageous conduct against Jackson by intentionally slamming his face into the door of his vehicle; spraying mace into his eyes and bloody face multiple times; and violently throwing him to the pavement. Jackson did not pose an immediate threat to the safety of MPD and J. Doe Officers, was not actively resisting

and was unarmed at all times that MPD and J. Doe Officers engaged in this extreme and outrageous conduct.

48. MPD and J. Doe Officers' conduct intentionally and recklessly caused Jackson severe emotional distress including, but not limited to, anxiety, major depression and insomnia. Jackson was diagnosed with PTSD and prescribed medication to treat his anxiety, insomnia and depression.

49. The District is vicariously liable under the doctrine of *respondeat superior* for the intentional infliction of emotional distress committed by the MPD and J. Doe Officers against Jackson. MPD and J. Doe Officers were acting within the scope of their employment when they committed intentional infliction of emotional distress against Jackson in the course of effecting an arrest.

50. As a direct result of the MPD and J. Doe Officers' intentional infliction of emotional distress against Jackson, for which the District is vicariously liable, Jackson has suffered extensive damages including, but not limited to, physical injuries, pain and suffering, anxiety, depression, insomnia, lost earnings and medical expenses.

51. The acts of MPD and J. Doe Officers were done knowingly, intentionally, maliciously and with deliberate and callous indifference to Jackson's personal safety, constitutional rights and with the intent to harm Jackson. Because of these acts, Jackson is entitled to an award of punitive damages against these Officers.

### COUNT V
### Violation of the Fourth Amendment – 42 U.S.C. § 1983
### (Against the District of Columbia as a Municipal Corporation)

52. Jackson re-alleges Paragraphs 11 – 27 and incorporates them herein by reference.

53. At all times relevant hereto, Jackson had a right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. This right encompasses the right to be free from the use of excessive force by law enforcement officers during an arrest, investigatory stop or any other seizure.

54. The District is liable under 42 U.S.C. § 1983 because it developed and tolerated long-standing MPD-wide customs, policies and practices that encouraged unconstitutional uses of force. The District failed to properly train and supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Jackson and citizens of the District. In addition, the District tacitly authorized a persistent and widespread practice of failing to adequately investigate and discipline its MPD Officers for misconduct. The District's failure to stop or correct a pattern of excessive force caused the foreseeable violation of Jackson's Fourth Amendment rights.

55. As a direct result of the District's willful indifference to Jackson's constitutional rights, Jackson has suffered extensive damages including, but not limited to, physical injuries, pain and suffering, anxiety, depression, insomnia, lost earnings and medical expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Jackson prays for judgment as follows:

(a) An award of compensatory damages in an amount to be determined that would fully compensate Jackson for the harm caused by the conduct of the Defendants alleged herein, including physical injuries, pain and suffering, anxiety, lost earnings and medical expenses;

(b) An award of punitive damages in an amount to be determined that would punish the MPD and J. Doe Officers for the willful, wanton and reckless conduct alleged herein and

would effectively deter the Defendant Officers and other MPD Officers from engaging in similar conduct;

    (c)    An award of Plaintiff's costs and reasonable attorney's fees in this action under 42 U.S.C. § 1988 and all applicable statutory, common law and constitutional provisions;

    (d)    An order directing the District to proceed expeditiously with disciplinary action against Defendant Officers, to the extent the District has not done so already; and

    (e)    An order granting other relief as this Court deems just and proper.

Dated: December 23, 2015                                      Respectfully Submitted,

                                                                     /s/ Meredith L. Kinner
                                                           Meredith L. Kinner
                                                           Bar No. 1024953
                                                          KINNER & MCGOWAN, PLLC
                                                          230 Rhode Island Ave., NE Suite 504
                                                          Washington, DC 20002
                                                          mkinner@kinnermcgowan.com
                                                          (202) 306-0210

*Counsel for Elijah Jackson*